IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

VOLVO GROUP NORTH AMERICA, LLC                                    PLAINTIFF

V.                                          CIVIL ACTION NO. 3:19CV119-NBB-RP

INTERNATIONAL UNION UNITED
AUTOMOBILE AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA, UAW ("UAW") AND
UAW LOCAL NO. 2406                                                DEFENDANTS

## MEMORANDUM OPINION

This cause comes before the court upon the defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Upon due consideration of the motion, response, and applicable authority, the court is ready to rule.

### Factual and Procedural Background

Defendant UAW Local 2406, a subordinate body of defendant International Union United Automobile Aerospace and Agricultural Implement Workers of America, UAW ("UAW"), represents workers at the warehouse facility of plaintiff Volvo Group North America, LLC ("Volvo") located in Byhalia, Mississippi. Volvo opened the Byhalia facility in late 2014, moving operations from a facility in Memphis, Tennessee. Initially there were fewer than 100 employees in the bargaining unit at Byhalia, but the facility has now grown to include more than 400 employees in the bargaining unit.

The collective bargaining agreement ("CBA") that governs the terms and conditions of employment of these employees was executed in 2010 when Volvo's warehouse was located in Memphis. The CBA allows Local 2406 to designate one union committee person per shift and one shop chairperson for the entire bargaining unit "to facilitate representation [of bargaining

unit employees] during the grievance procedure" established by the CBA. Under the CBA, the committee persons are "permitted a reasonable amount of time to investigate grievances during their normally scheduled shift" without loss of pay. As the bargaining unit grew from fewer than 100 to greater than 400 employees, however, union representational activities began to require a much greater amount of the committee persons' and shop chairperson's time; thus, in March 2018, the Unions and Volvo entered into a letter agreement amending the CBA to provide that the shop chairperson would be allowed to spend his or her full 40-hour work week on union representational activities without loss of pay, as long as the bargaining unit is comprised of 175 or more active employees. The agreement further provides that the shop chairperson remains eligible for overtime, which may be used for either union representational purposes or to perform bargaining unit work.

This agreement was in place for approximately a year when Volvo advised the Unions of its legal opinion that the provisions in the agreement requiring payments to one or more full-time union representatives employed by Volvo run afoul of Section 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186, and thus require modification. Section 302 is a criminal statute that, among other things, makes it a felony for an employer to pay money to a union representative unless a statutory exception applies. 29 U.S.C. § 186(a) and (d)(1). After consulting their legal counsel, the Unions advised Volvo of their contradictory legal opinion that the agreements are entirely lawful under Section 302. The Unions take the position that the provisions at issue in the CBA fall under one of the statutory exceptions contemplated by Section 302.

Volvo filed the present action in June 2019 seeking injunctive relief pursuant to Section 302 and declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a).

Maintaining its position that the contractual provisions at issue requiring Volvo to pay the salary of a full-time Union representative contravene LMRA Sections 302(a) and (b), Volvo seeks, in addition to injunctive relief unspecified in the complaint, a declaration from this court that "all provisions in the Byhalia Agreement obligating Volvo to pay the wages of full-time Union representatives are unlawful and in conflict with LMRA Section 302, and that ongoing compliance with these provisions is prohibited by LMRA Section 302." The Unions subsequently filed this motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the lawsuit does not satisfy the "case or controversy" requirement of Article III of the United States Constitution and the Federal Declaratory Judgment Act.

## Standard of Review

"As a court of limited jurisdiction, a federal court must affirmatively ascertain subject-matter jurisdiction before adjudicating a suit. A district court should dismiss where it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject matter jurisdiction." *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013). In making such a determination, the court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565-66 (5th Cir. 2010). "The party asserting jurisdiction bears the burden of proof." *Bank of Louisiana v. FDIC*, 919 F.3d 916, 922 (5th Cir. 2019).

## Analysis

Article III of the Constitution restricts "the judicial power of federal courts" to "cases" and "controversies." *Flast v. Cohen*, 392 U.S. 83, 94 (1968). "Concrete legal issues, presented

3

in actual cases, not abstractions, are requisite." *United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947). "This is as true of declaratory judgments as any other field." *Id.* In fact, the text of the Declaratory Judgment Act incorporates this constitutional limitation. The Act provides that a federal court may issue a declaratory judgment only "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). Supreme Court precedent requires "that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character, from one that is academic or moot." *Aetna*, 300 U.S. at 240. Whether a declaratory judgment action falls on the nonjusticiable "abstract question" or the justiciable "case or controversy" side of the dividing line rests on a careful consideration of the facts of each case examined against the backdrop of all the surrounding circumstances. *MedImmune*, 549 U.S. at 127 (citing *Maryland Cas.*, 312 U.S. at 273).

Volvo contends that the present lawsuit satisfies the case or controversy requirement of Article III and the Declaratory Judgment Act. As the defendants note, Volvo's complaint does not directly address how this case represents a justiciable controversy under the Declaratory

4

Judgment Act, and Volvo's briefing in response to the present motion takes issue with the Unions' characterization of the alleged dilemma Volvo faces. The court, however, finds the Unions' description of Volvo's situation apt for the "case or controversy" analysis required here:

> Given the contracting parties' alleged disagreement as it pertains to operations at Volvo's Byhalia, Mississippi facility, the Company [Volvo] faces a supposed dilemma. On the one hand, if the Company continues to make payments to Local 2406's full-time shop chairperson as required by the parties' CBA, it runs the risk of being prosecuted for committing a felony crime. On the other hand, if the Company, to eliminate the asserted risk of such a criminal prosecution, engages in self-help and stops making those contractually-required payments without this Court's imprimatur in the form of a declaratory judgment in the Company's favor, the Local could bring and potentially prevail on a breach-of-contract claim against the Company under the CBA's grievance-arbitration procedure.

[Doc. 20, p. 4] The court finds Volvo's dilemma to fall on the nonjusticiable "abstract question" dividing line rather than an actual case or controversy, and the relief requested would amount to this court's issuance of an advisory opinion, which is not allowed, as "it is quite clear that 'the oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.' Thus, the implicit policies embodied in Article III, and not history alone, impose the rule against advisory opinions on federal courts." *Flast*, 392 U.S. at 96 (1968) (quoting C. Wright, Federal Courts 34 (1963)).

In *MedImuune*, *supra*, a leading contemporary Supreme Court case on the topic, the declaratory judgment plaintiff (MedImmune) was party to a patent license agreement with the declaratory judgment defendant (Genentech) under which the plaintiff was obligated to pay royalties to the defendant for the use of an existing patent relating to the production of an antibody used in the manufacture of the plaintiff's product (MedImmune's drug "Synagis") which accounted for more than 80 percent of MedImmune's sales revenue. When the defendant's existing patent matured into a new patent, the plaintiff took the position that it was no longer required to pay royalties to the defendant under the parties' license agreement, both

5

because the new patent was invalid and was not infringed upon by Synagis in any event. The defendant disagreed on both points and threatened the plaintiff with a patent infringement lawsuit if it stopped paying royalties under the license agreement – a lawsuit which, if the defendant prevailed, could result in MedImmune being ordered to pay actual and treble damages and attorney's fees, be enjoined from selling Synagis, by far its largest sales revenue generator, and face a potentially ruinous outcome. *MedImmune*, 549 U.S. at 121-22.

Based on these facts, the Court found that MedImmune faced the kind of dilemma that "it was the very purpose of the Declaratory Judgment Act to ameliorate." *Id.* at 129. In reaching its conclusion, the Court analogized MedImmune's dilemma to that faced by persons or entities who must choose between abandoning their asserted constitutional rights and risking criminal prosecution. *Id.* The Court relied heavily on its earlier decision in *Steffel v. Thompson*, 415 U.S. 452 (1974). In *Steffel*, an antiwar protestor sought a declaratory judgment that a state's criminal trespass statute was unconstitutional as applied to his handbilling activities on the exterior sidewalk of a shopping center. Steffel had twice been warned that he would be arrested under the statute if he continued his activities, and he had avoided arrest on the second occasion only by abandoning his activities and leaving the scene, while his companion, who stayed behind and continued the handbilling activities, was in fact arrested and arraigned on a charge of criminal trespass. *Steffel*, 415 U.S. at 455-56. On these facts, the Court held that the parties' dispute over the constitutionality of the criminal trespass statute as applied to the handbilling activities met the test of a "substantial controversy" posing a "sufficiently immediate and realistic" threat of injury to Steffel as to warrant a federal court's exercise of jurisdiction over his declaratory judgment action – namely because Steffel had alleged threats of criminal prosecution that could

6

not be deemed "imaginary or speculative" and because Steffel could successfully avoid criminal prosecution only by abandoning his asserted constitutional rights. *Id.* at 459-60.

This court finds the dilemmas faced by the plaintiffs in *MedImmune* and *Steffel* distinguishable from the dilemma Volvo allegedly faces. The threat of harm to the plaintiffs in each of the earlier cases was real, concrete, immediate, and potentially devastating – not imaginary, speculative, or theoretical. MedImmune risked losing its primary sales revenue generator and perhaps its viability as a business as the result of a potential patent infringement suit in which it could risk actual and treble damages, while Steffel faced the very real and immediate threat of criminal prosecution unless he abandoned his asserted constitutional rights – facts both Courts found relevant in making its decisions. Volvo does not face such dire consequences; nor is there any immediacy to Volvo's alleged concerns. As the Unions assert in their briefing of the present motion – assertions uncontested by Volvo – Volvo or a Volvo-affiliated company has been making payments to full-time union representatives employed by Volvo at its Virginia facility in accordance with like CBA provisions on a continuous basis for nearly forty years.[1] As in the present case, the provisions there entitle one or more bargaining unit employees, conditional on the size of the bargaining unit, to take a leave of absence to serve as a full-time union representative and require Volvo to continue to pay the employee's wages while he or she is on leave for this purpose. It is further uncontested that it has long been a common practice in many industries with large bargaining units for employers to agree in collective bargaining to contract provisions requiring payments to full-time union representatives on like terms. Though Volvo has operated under similar CBA provisions for nearly forty years,

---

[1] The day after Volvo filed the present action, it filed a nearly identical lawsuit against the UAW and a different local union located in Virginia challenging the legality of provisions in the CBA at issue there that mirror the CBA provisions at issue here in all relevant respects. *See Volvo v. UAW and UAW Local No. 2069*, No. 7:19-cv-419 (W.D. Va.).

7

it does not allege that it or any of its affiliated companies has ever been prosecuted or threatened with prosecution under Section 302, which was enacted into law in 1947, for making such payments. Even if the parties' current arrangement under the CBA is an illegal violation of Section 302 – a position the Unions steadfastly contest – and even if Volvo faces a genuine threat of criminal prosecution if it continues to make payments to its employee serving as the full-time union representative, as the Unions note, Volvo could eliminate the threat by stopping those payments; and, though the action would be in breach of the CBA, taking such a self-help measure would not result in the type of serious consequences faced by the *MedImmune* and *Steffel* plaintiffs. Such is the case here because the Unions' remedy for such a contract breach would be to file a contract grievance and submit the matter to arbitration if the parties are unable to reach a fair and equitable settlement through the use of the grievance procedure established by the CBA. Volvo's worst-case scenario, if the arbitrator were to determine that Volvo has no adequate legal defense for its CBA breach, would be monetary relief limited to the amount necessary to make the injured party whole, as the CBA provides for no form of monetary relief beyond the make-whole amount. This potential result for Volvo and the lack of immediacy of it are in stark contrast to the circumstances in *MedImmune* and *Steffel*. MedImmune could not engage in self-help actions without potentially ruinous consequences, and Steffel was most certainly under the very real and immediate threat of arrest.

Reiterating the standard for determining whether this declaratory judgment action satisfies the case or controversy requirement – that is, "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant" relief, the court finds that Volvo's complaint misses the mark. *MedImmune*, 549 U.S. at 118 (quoting *Maryland Cas.*, 312 U.S. at

273). If the court were to exercise jurisdiction over this case and issue the declaratory judgment requested by Volvo, it would be engaging in the resolution of an academic dispute and issuing an advisory opinion – neither of which it is allowed to do under Article III or the Declaratory Judgment Act. This court therefore finds, based on the present jurisdictional facts before it, that it does not have subject matter jurisdiction of this case, and the case must be dismissed. Accordingly, the injunctive relief requested by Volvo must also be denied.

## Conclusion

For the foregoing reasons, the court finds that the defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is well taken and shall be granted. A separate order in accord with this opinion shall issue this day.

This, the 26th day of March, 2020.

                                               /s/ Neal Biggers
                                               NEAL B. BIGGERS, JR.
                                               UNITED STATES DISTRICT JUDGE